## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TOMMY W. WILLIAMS,**              ) | |
|                    ) | |

**TOMMY W. WILLIAMS,**     )

             )

      **Plaintiff,**    )

             )

**vs.**                  )    **Case No. CIV-04-877-AR**

             )

**JO ANNE B. BARNHART,**    )

**Commissioner, Social Security**   )

**Administration,**         )

             )

      **Defendant.**    )

## <u>MEMORANDUM OPINION</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying his application for disability insurance benefits. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has answered and filed the administrative record (hereinafter Tr. _____). Both parties have briefed their respective positions, and thus the matter is at issue. For the reasons stated herein, the decision is hereby reversed, and the matter remanded for further administrative proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits on December 1, 2001, alleging that he became disabled on April 28, 2001, due to heart problems, high blood pressure, depression, problems sleeping, shortness of breath, and numbness in the left arm. Tr. 16-17, 43-46.[1] Plaintiff was insured for benefits through December 31, 2001. Tr. 17, 33.

---

[1]Plaintiff filed one earlier application for supplemental security income benefits, and two earlier applications for disability income benefits. Tr. 16. The most recent prior application for disability insurance benefits was filed on August 19, 1999, and was denied initially and on reconsideration. Plaintiff requested

The application was denied on initial consideration and on reconsideration at the administrative level. Tr. 32, 33, 34-36, 38-39. Pursuant to Plaintiff's request, a hearing <u>de novo</u> was held before an administrative law judge on June 24, 2003. Tr. 40, 358-95. Plaintiff appeared in person and with counsel and offered testimony in support of his application. Tr. 360, 362-89, 394. A vocational expert testified at the request of the administrative law judge. Tr. 275, 389-394. The administrative law judge issued his decision on August 27, 2003, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that he was thus not entitled to disability insurance benefits. Tr. 13-15, 16-24. The Appeals Council denied Plaintiff's request for review on May 12, 2004, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 5-8.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account

---

a hearing, and the administrative law judge issued a decision denying benefits on April 27, 2001. The Appeals Council denied review, and so the decision of the administrative law judge became the final decision of the Commissioner. The onset date herein is the date following the final decision of the Commissioner on Plaintiff's most recent prior disability insurance benefits application.

whatever in the record fairly detracts from its weight.  However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted).  The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751, n. 2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. Id. at 751.

## III.  ADMINISTRATIVE LAW JUDGE'S ANALYSIS

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520.  Tr. 17.  He first found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 18, 23. At steps two and three, the administrative law judge found that Plaintiff suffered from coronary artery disease, hypertension, and depressive disorder, and that his impairments were severe but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 18, 19, 23.  The administrative law judge stated that he had specifically reviewed Sections 1.00, 4.00, 12.04, and 12.09 of the impairment listings.  Tr. 19, 23.  At the fourth step of the sequential evaluation process, the administrative law judge found that Plaintiff had the residual functional capacity for light work with occasional stooping, with mild to moderate

levels of discomfort, anxiety and fatigue.  Tr. 21, 23.  The administrative law judge found

that Plaintiff could not perform his past relevant work as a prefab electrician or roofer. Tr.

21, 23.  However, the administrative law judge found that a person with Plaintiff's residual

functional capacity and vocational factors could perform work as an electric assembler, an

electronic motor assembler, and a wirer and that these jobs are available in significant

numbers in the national economy. Tr. 22, 23. Thus, the administrative law judge found that

Plaintiff was not disabled and was not entitled to disability insurance benefits.  Tr. 22-24.

## IV.  RELEVANT MEDICAL RECORDS

The Commissioner contends that the relevant time frame for purposes of the

application now on appeal is April 28, 2001, to December 31, 2001. Plaintiff does not

specifically reference the relevant period as such, but agrees that the disability onset date

is April 28, 2001, and takes no issue with the Commissioner's statement that the last date

insured was December 31, 2001. Because some of the Commissioner's arguments are that

certain medical records referenced by Plaintiff are not pertinent to the relevant time period,

the Court has divided discussion of the medical record accordingly. Moreover, the Court

has limited the medical records summary to those records referencing Plaintiff's mental

health, as the only issue raised by Plaintiff to which a discussion of the medical records is

necessary concerns the alleged omission of limitations related to his mental residual

functional capacity.

### 1.  Records Prior to April 28, 2001

On January 5, 2000, Plaintiff was seen at the Veterans Administration Medical

Center (VAMC) by Tod M. Dow, P.A. for follow-up of lipid management.  Tr. 303-05.  At

that visit, Mr. Dow noted that Plaintiff "did not notice any effects from trazadone on his

sleep" and that "he is able to go into a light sleep for 2 hours but then wakes up." Tr. 304. It was noted that Trazodone would be increased to 100 mg at bedtime, and that Plaintiff had an appointment with mental health for evaluation on January 28, 2000. Tr. 304.

On February 22, 2000, Plaintiff had a consultation at the mental health clinic at the VAMC. Tr. 301. At that visit, Plaintiff reported depression and nightmares for the last 12 years, that he does not want to do things around the house, and that he is often irritable. Tr. 301. Although he denied suicidal ideation, Plaintiff reported that he "often thinks that he might be 'better off' if he was dead." Tr. 301. He reported that he cannot be in large crowds, and that he experiences significant irritability when something does not go his way. Tr. 301. Objectively, it was noted that Plaintiff was adequately dressed and groomed, was polite and cooperative, that his range of affect and mood were normal, that he was socially appropriate, and he did not display any signs of a thought disorder. Tr. 301. Plaintiff was invited to enroll in an anxiety/stress management course, but declined. Tr. 301. However, he agreed to see Dr. Barbara Masters, a psychiatrist, to evaluate starting medications for insomnia and depression. Tr. 301-02. He reported to Dr. Masters that the Trazodone he had been taking was like taking aspirin, but it made him feel groggy in the morning. Tr. 302. He complained of anxiety and irritability during the day. Tr. 302. His mood and affect were noted to be anxious, with no homicidal or suicidal ideation. Tr. 302. The diagnosis was generalized anxiety disorder, and the GAF[2] was 55. Tr. 302. Dr. Masters

---

[2]The GAF is used by clinicians to report an individual's overall level of functioning. See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

started Plaintiff on Hydroxyzine, 50 mg at bedtime.  Tr. 302.  Plaintiff was also started on

Citalopram Hydrobromide,[3] 40 mg, one-half tablet per day.  Tr. 302.

On June 29, 2000, Plaintiff was again seen by Dr. Masters.  Tr. 152.  He reported that

he used to be active, but that now he did not want to do anything. Tr. 152.  He stated that

he was interested in beginning classes for anger management.  Tr. 152.  Dr. Masters noted

him to be sad and angry, to have no homicidal or suicidal ideation, and to have a GAF of

55.  Tr. 152.  Her diagnosis was dysthymia.  Tr. 152.  Plaintiff was started on Paroxetine[4]

HCL 40 mg, once per day, and was to return to the clinic in three months. Tr. 152.  Plaintiff

began an anger management skills class on August 3, 2000, conducted by Margaret Carroll,

MSW, LCSW.  Tr. 150-51.  He stated he was referred by Dr. Masters because he was "very

impatient and don't want to do anything unless I can get it fast." Tr. 150-51.  His diagnosis

was reported as dysthymia.  Tr. 150.  Plaintiff attended the class three more times,

completing it on August 24, 2000.  Tr. 146-47, 148, 149.  Ms. Carroll's diagnosis at all four

sessions was dysthymia.  Tr. 146, 148, 149, 150.  Plaintiff was referred to an anxiety stress

management class.  Tr. 146.

Plaintiff attended an anxiety/stress management class with psychology technician

Bruce Long, M. Ed., on September 11, 2000. Tr. 145. Plaintiff continued weekly

anxiety/stress management classes through October 30, 2000, first with Mr. Long, and then

---

[3]"Citalopram is used to treat depression. Citalopram is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs). It works by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance." Medline Plus, <http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699001.html> (accessed May 6, 2005).

[4]Paroxetine is "used to treat depression, panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks), and social anxiety disorder (extreme fear of interacting with others or performing in front of others that interferes with normal life)." MedlinePlus <http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a698032.html> (accessed May 2, 2005).

with Dana D. Foley, a clinical psychologist.  Tr. 137-45.  Both Mr. Long and Dr. Foley deferred a clinical diagnosis.  Id.  During those sessions, Plaintiff reported that one of the primary stressors in his life at that time was his home situation, Tr. 145; that he had difficulty getting motivated, Tr. 143; and that he had problems with stress, no patience, and trouble sleeping since 1984. Tr. 140.  At Plaintiff's last anxiety/stress management class on October 30, 2000, he was referred by Dr. Foley to Mr. Long for individual stress management sessions.  Tr. 137.

Plaintiff saw Dr. Masters on September 28, 2000, reporting that the Paxil (Paroxetine) "does nothing."  Tr. 141.  His mood and affect were noted as "some sadness," with no homicidal or suicidal ideation.  Tr. 141.  Dr. Masters' diagnosis was dysthymia, with a GAF of 60.  Tr. 141.  She ordered that Paxil be discontinued after seven days and that Plaintiff be started on Buproprion[5] HCL 100 mg, once per day.  Tr. 141.  Plaintiff was to return to the clinic in three to four months.  Tr. 141.

On October 31, 2000, Plaintiff was seen by Tod M. Dow, P.A., for a chronic disease and health maintenance physical.  Tr. 126. At that time, in response to questions as part of a "depression screen," Plaintiff indicated that he felt depressed every day over the past week, had felt "sad, blue, depressed or lost all interest or pleasure in things" for two consecutive weeks or more over the past year, had had two years or more in which he felt depressed or sad most of the time, had felt sad or depressed most of the time in the past year, and was currently in treatment for depression.  Tr. 127.

---

[5]Bupropion is also used to treat depression.  MedlinePlus <http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a695033.html> (accessed May 3, 2005).

Plaintiff saw Mr. Long on November 9, 2000, for a biofeedback assessment.  Tr. 125.  At that time, Plaintiff told Mr. Long that he experiences a great deal of stress, frustration, and anger in his life.  Tr. 125.  He stated that he was by nature a pessimistic person, and "he has a good deal of difficulty letting go of projects that he starts and added that this frequently gets him into trouble because when he becomes frustrated with a job, he usually does something that effects the project in a negative way."  Tr. 125.  Plaintiff continued to see Mr. Long for stress management sessions through January 24, 2001, when it was mutually agreed that their next session would be the last.  Tr. 121-24.  At their last session on March 8, 2001, it was decided that Plaintiff would end regular sessions at that time, but that he would continue to see Dr. Masters for medication.  Tr. 119.

Plaintiff saw Dr. Masters on February 5, 2001, and his mood and affect were noted to be "some anger" and frustration, with no homicidal or suicidal ideation. Tr. 120.  The diagnosis was dysthymia, with a GAF of 60.  Tr. 120.  Plaintiff's dosage of Buproprion was increased to 100 mg, three times per day. Tr. 120.

**2.  Records From April 28, 2001, to December 31, 2001**

Plaintiff saw Dr. Masters on June 20, 2001.  Tr. 113.  He reported that things were fair, and that he had been in two confrontations lately, but had walked away after some time.  Tr.  113.  His mood and affect were noted to be flat, with no homicidal or suicidal ideation.  Tr. 113.  The diagnosis was dysthymia, with a GAF of 60.  Tr. 113.  Plaintiff saw Mr. Long on June 25, 2001, stating that he was having difficulty sleeping.  Tr. 110.  He also reported that he was concerned and frustrated because his daughter was going through a divorce, and that he continues to expect the worst outcome in situations.  Tr. 110.  The plan was for Plaintiff to call for a future appointment.  Tr. 110.

8

Plaintiff returned to Dr. Masters on September 26, 2001, reporting that he had been "really depressed." Tr. 105. He also reported that he had not been sleeping, and Dr. Masters started Trazadone HCL 100 mg, beginning at one-half a tablet at bedtime and increasing to two tablets at bedtime over a nine-day period. Tr. 105. Mood and affect were noted to be sad, with no homicidal or suicidal ideation. Tr. 105. The diagnosis was changed to depression, and the GAF was 46. Tr. 105.

### 3. Records After December 31, 2001

On January 25, 2002, Plaintiff returned to Dr. Masters. Tr. 263. She noted his mood and affect to be anxious, with no homicidal or suicidal ideation. Tr. 263. Her diagnosis was major depressive disorder, recurrent, moderate, with a GAF of 53. Plaintiff was started on Wellbutrin SR, 150 mg, twice per day, and was asked to return in three months. Tr. 263.

On March 19, 2002, Plaintiff was referred to J. Ronald Cruse, Ph.D., for a consultative mental status examination. Tr. 173. Dr. Cruse concluded that Plaintiff's intellectual capacity, recent memory, delayed recall, abstract thinking, judgment, and concentration were below average, and that his immediate memory and past memory were average. Tr. 175. He concluded that his sleep difficulties, irritability, alcohol use, and depression appear to be severe, "limiting his ability to make adjustments occupationally, personally, and socially." Tr. 175. His diagnostic impression was major depressive disorder, severe, without psychotic features; alcohol dependence; and polysubstance abuse, in remission. Tr. 176. A Mental Residual Functional Capacity Assessment form completed on April 11, 2002, by medical consultant Janice B. Smith, Ph.D., indicates that Plaintiff's ability to understand and remember as well as to carry out detailed instructions is

9

markedly limited, and that his ability to maintain attention and concentration for extended periods is moderately limited. Tr. 178. She also found that his ability to interact appropriately with the public was markedly limited. Tr. 179. To elaborate, she stated: "He can complete simple tasks under routine supervision. He can relate effectively to co-workers but not the general public." Tr. 180. Dr. Smith's rating of functional limitations, as part of the Psychiatric Review Technique, was that Plaintiff was moderately restricted in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace. Tr. 191. She also found one or two episodes of decompensation, each of extended duration. Tr. 191.

On June 6, 2002, Plaintiff returned to Dr. Masters, reporting that he was so angry and sad that he stayed in for three days, that he has periods when he does not want to see or talk to anyone, that he gets so angry and then gets sad, and that he just cannot shut down his mind. Tr. 254. He did not want to change medications. Tr. 254. His mood and affect were noted to be sad and anxious, with no homicidal or suicidal ideation. Tr. 254. The diagnosis was major depressive disorder, recurrent, mild-moderate, with a GAF of 58. Tr. 254.

On December 6, 2002, Plaintiff returned to Dr. Masters, reporting that "things are terrible." Tr. 243. Mood and affect were noted to be sad and anxious, with no homicidal or suicidal ideation. Tr. 243. The diagnosis was major depressive disorder, recurrent, moderate, with a GAF of 48. Tr. 243.

On May 6, 2003, Plaintiff returned to Dr. Masters, reporting numerous financial difficulties and to being "stressed about the war." Tr. 239. He stated that he had multiple stressors and would like to attend a crisis group. Tr. 239. Mood and affect were noted to

10

be angry, with no homicidal or suicidal ideation.  Tr. 239.  The diagnosis was major

depressive disorder, recurrent, moderate, with a GAF of 50. Tr. 239.  On May 19, 2003, and

June 2, 2003, Plaintiff attended two mental health crisis group therapy sessions with

psychologist Pamela C. Fischer.  Tr.  230-31.

## V.  DISCUSSION

Plaintiff raises three issues on appeal.  First, Plaintiff claims that in formulating his

residual functional capacity assessment, the administrative law judge failed to include all

of his limitations. Plaintiff's Brief,  p.  8-13. Second, Plaintiff contends that the

administrative law judge failed to support his opinion that he could perform the demands

of the alternative jobs proposed by the vocational expert.  Plaintiff's Brief, p. 13-16.  Third,

Plaintiff claims that the administrative law judge made an improper credibility assessment.

Plaintiff's Brief, p.  16-19.

Plaintiff first claims that the administrative law judge erred at step four of the

sequential process by failing to formulate a residual functional capacity (RFC) assessment

that included all of his limitations.  Plaintiff's Brief, p. 8.  In particular, Plaintiff claims

that the RFC assessment should have limited Plaintiff to simple tasks under routine

supervision, and to relating with co-workers but not the general public.  Plaintiff's Brief,

p. 8-9.  Plaintiff notes that the State agency medical consultants included these

limitations, but that the administrative law judge only adopted that part of the agency

consultant's RFC assessment which limited Plaintiff to light work with occasional

stooping.  Id.  Plaintiff also argues that the administrative law judge improperly

disregarded the medical opinions of Plaintiff's treating physicians at the V.A. Medical

Center, noting repeated diagnoses of depression and GAF scores between 48-55. <u>Id.</u> at 9. Plaintiff also notes Beck Anxiety Index scores of 24 and 27, indicating moderate to severe anxiety. <u>Id.</u> at 10. Plaintiff contends that the administrative law judge did not indicate the weight given to the opinions of Plaintiff's treating physicians, to the opinion of consultative examining psychologist Dr. Cruse, or to the opinions of the state agency medical consultants. <u>Id.</u> at 11-12.

With regard to the GAF scores, the Commissioner first responds that Plaintiff has failed to cite to any specific GAF scores in the record, and that the Court need not "comb through the record" where an argument has not been tied to specific references in the record. Commissioner's Brief, p. 3. Second, the Commissioner argues that the GAF score is intended for use by practitioners in making treatment decisions, and does not necessarily relate to one's ability to work. Commissioner's Brief, p. 3-4. Third, the Commissioner argues that almost all of the GAF scores in the record were not during the relevant time period from April 28, 2001 to December 31, 2001. Commissioner's Brief, p. 4. In response to Plaintiff's claim regarding the administrative law judge's failure to mention the Beck Anxiety findings, the Commissioner notes that the score results were from October 2000, before the relevant review period. Commissioner's Brief, p. 5. The Commissioner also notes that the scores do not provide evidence of how Plaintiff functions with anxiety, and that Dana D. Foley, Ph.D., who assigned the scores, did not prescribe any limitations for Plaintiff. <u>Id.</u>

With regard to the Veteran's Administration Medical Center records, the Commissioner also contends that many of those records are either before or after the

12

relevant time period.  Commissioner's Brief, p. 5.  Furthermore, the Commissioner argues that the administrative law judge did discuss the medical evidence from the VAMC, and that he "did not discount" any of the medical opinions in the record.  Id. at 5-6.  Finally, with regard to Plaintiff's contention that the administrative law judge failed to explain the weight given to the opinion of consultative examiner J. Ronald Cruse, Ph. D., the Commissioner again argues that the examination took place in March 2002, after Plaintiff's insured status had expired.  Commissioner's Brief.  The Commissioner does not specifically address Plaintiff's argument that the administrative law judge ignored the opinions of agency medical experts.

Part of the administrative law judge's analytical task is to determine a claimant's RFC, defined as what he can still do despite his limitations.  See 20 C.F.R. § 404.1545(a).  The RFC assessment is part of the step four analysis.  Plaintiff bears the burden at step four of not only proving that he cannot return to his particular former job, but also to his former occupation as that occupation is generally performed throughout the national economy.  O'Dell v. Shalala, 44 F.3d 855, 859-60 (10th Cir. 1994).  The administrative law judge has the duty to make specific and detailed predicate findings and to include a sufficient narrative discussion concerning a claimant's residual functional capacity.  Social Security Ruling 96-8p, 1996 WL 374184, at *7 (stating that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, must contain a thorough discussion and analysis of the objective medical and other evidence, and must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the

medical evidence); see also Winfrey v. Chater, 92 F.3d 1017, 1023-24 (10th Cir.1996) (describing the administrative law judge's responsibilities in assessing RFC under phase one of step four of the Commissioner's process).  The RFC assessment must always consider and address medical source opinions; if the RFC assessment conflicts with an opinion from a medical source, the administrative law judge must explain why the opinion was not adopted.  Social Security Ruling 96-8p, 1996 WL 374184, at *7.

Moreover, the Tenth Circuit Court of Appeals has made it clear that an administrative law judge's failure to delineate his findings regarding the weight given to medical opinions from treating sources is grounds for remand because, without these findings, the decision cannot be properly reviewed. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir 2003); Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (because administrative law judge failed to explain or identify claimed inconsistencies, reasons for rejecting that opinion are not "sufficiently specific" to enable meaningful review).

"In deciding how much weight to give a treating source opinion, an [administrative law judge] must first determine whether the opinion qualifies for 'controlling weight.'" Watkins, 350 F.3d at 1300.

> An [administrative law judge] must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." If the answer to this question is "no," then the inquiry at this stage is complete. If the [administrative law judge] finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. The agency ruling contemplates that the [administrative law judge] will make a finding as to whether a treating source opinion is entitled to controlling weight. In this case, the [administrative law judge] obviously

14

> did not give [the treating physician's] opinion controlling weight, but he did
> not articulate a reason. A finding at this stage (as to whether the opinion is
> either unsupported or inconsistent with other substantial evidence) is
> necessary so that we can properly review the [administrative law judge's]
> determination on appeal.

Id. (citations omitted) (citing Social Security Ruling 96-2p, 1996 WL 374188, at *2).   "In

choosing to reject the treating physician's assessment, an [administrative law judge] may

not make speculative inferences from medical reports and may reject a treating

physician's opinion outright only on the basis of contradictory medical evidence and *not*

*due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v.

Barnhart, 288 F.3d 1248, 1252( 10th Cir. 2002)(quotations omitted).

However, that is not the end of the treating physician's rule analysis.  In Watkins,

the Tenth Circuit held that the administrative law judge must explain the weight given

to a treating physician's opinion even when it is not considered controlling.  Watkins, 350

F.3d at 1300.  The administrative law judge must supply "good reasons" for the weight

ultimately given to the treating doctor's opinion.  Id. at 1301 (citing 20 C.F.R. §

404.1527(d)(2)).  Because in Watkins the administrative law judge failed to articulate the

weight given to the treating doctor's opinion, remand was necessary. The Court

explained:

> Here, the [administrative law judge] failed to articulate the weight,
> if any, he gave [the treating physician's] opinion, and he failed also to
> explain the reasons for assigning that weight or for rejecting the opinion
> altogether.  We cannot simply presume the [administrative law judge]
> applied the correct legal standards in considering [the treating physician's]
> opinion.  We must remand because we cannot meaningfully review the
> [administrative law judge's] determination absent findings explaining the
> weight assigned to the treating physician's opinion.

Id. (citing Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001)); Langley, 373 F.3d at 1119 (even if treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527[6]); Social Security Ruling 96-2p, 1996 WL 374188, at *4.

"[I]f the [administrative law judge] rejects the opinion completely, he must then give *specific*, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (emphasis added). "[A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Id. at 1300 (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4); accord Langley, 373 F.3d at 1120. In Langley, the Tenth Circuit remanded the case because, contrary to the requirements of Social Security Ruling 96-2p, the administrative law judge completely rejected the treating physician's opinion once he determined it was not entitled to controlling weight, without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set forth in 20 C.F.R. § 404.1527. Langley, 373 F.3d at 1120.

---

[6]Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the administrative law judge's attention which tend to support or contradict the opinion.

As recently as last month, the Tenth Circuit has made it clear that virtually nothing excuses the obligation of the administrative law judge to provide a written explanation of his analysis of medical source evidence. In Lackey v. Barnhart, No. 04-7041, 2005 WL 758797, at *3 (10th Cir. April 5, 2005),[7] the Court stated that a written explanation is required whether the administrative law judge is dealing with an opinion from a treating physician or an examining physician, and whether the opinion in question is a "medical opinion"[8] or an opinion on an issue reserved for the Commissioner's determination:[9]

> [W]e need not pause long over the different types of opinions here, because the [administrative law judge's] failure to mention [the physician] or his records *at all* clearly violates the Commissioner's own directives with regard to either § 404.1527 (a) (2) or § 404.1527 (e) opinions. "[W]hen, as here, an [administrative law judge] does not provide any explanation for rejecting medical [source] evidence, we cannot meaningfully review the [administrative law judge's] determination. Although we review the [administrative law judge's] decision for substantial evidence, we are not in a position to draw factual conclusions on behalf of the [administrative law judge]."

Id. (quoting Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001)).

In reviewing the decision of the administrative law judge, the Court finds that it does not contain a written explanation of the weight assigned to the opinions of treating physician Dr. Masters, examining physician Dr. Cruse, or the agency medical consultants.

Even excluding all of the medical records from treating psychiatrist Dr. Masters both before and after the relevant period, the administrative law judge's discussion of the

---

[7]This and any other unpublished disposition are cited herein for persuasive authority pursuant to Tenth Circuit Rule 36.3.

[8]*See* 20 C.F.R. § 404.1527 (a) (2).

[9]*See* 20 C.F.R. § 404.1527 (e).

records from the relevant time period is incomplete. For example, he mentions "treatment notes" of September 26, 2001, indicating a diagnosis of depression, trouble sleeping, a sad mood and affect, and the fact that Plaintiff's medication was "changed" to Trazadone. Tr. 18. However, he omits the fact that Plaintiff was taking 100 mg of Buproprion three times per day, and that he had been assigned a GAF[10] of 46 at that visit. Tr. 105. He omitted any discussion whatsoever of Plaintiff's June 20, 2001, visit to Dr. Masters, as well as his counseling session with Mr. Long on June 25, 2001. Tr. 110, 113. More significantly, however, is the fact that the administrative law judge never indicates the weight which he assigned to the opinion of treating psychiatrist Dr. Masters – in fact, he never specifically mentions Dr. Masters at all in his decision. Although the Commissioner states that the administrative law judge "did not discount" any of the medical opinions in the record, that is questionable given his failure to adopt any of the mental functional limitations proposed by the agency medical consultants who reviewed the medical records. See Tr. 21. While the opinions of Dr. Masters during the relevant period are limited, those records do show a change of diagnosis from dysthymia to depression, perhaps indicating a worsening of his condition.[11] Tr. 105, 113. She also assigned Plaintiff a GAF score of 46 on September 26, 2001, Tr. 105, and while the Commissioner

---

[10]A score of 41-50 indicates **Serious symptoms** (e.g. suicidal ideation, severe obsessive rituals, frequent shoplifting) **OR any serious impairment in social occupational, or school functioning** (e.g. no friends, unable to keep a job). American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

[11]"The essential feature of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least two years." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 345 (4th ed. 1994). Usually depressive disorder "consists of one or more discrete Major Depressive Episodes that can be distinguished from the person's usual functioning, whereas Dysthymic Disorder is characterized by chronic, less severe depressive symptoms that have been present for many years." Id. at 348.

is correct that a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work, a "GAF score of fifty or less, however, does suggest an inability to keep a job." Lee v. Barnhart, No. 03-7025, 2004 WL 2810224, at **3 (10th Cir. Dec. 8, 2004) (citing Oslin v. Barnhart, No. 02-5116, 2003 WL 21666675, at **3 (10th Cir. July 17, 2003)).

The administrative law judge also failed to explain the weight to be given to the opinion of consultative examining psychologist Dr. Cruse, although he did discuss the results of that mental status examination.  Tr. 19, 173.  First, the Court disagrees with the Commissioner's contention that the administrative law judge did not need to explain the weight accorded to Dr. Cruse's opinion because the examination occurred after Plaintiff's last insured date.  It is proper for the administrative law judge to consider retrospective diagnoses or opinions concerning a claimant's impairments, so long as those diagnoses or opinions are based on objective evidence of an actual disability prior to the expiration of his insured status.  Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir.1991).  Moreover, the administrative law judge did discuss the results of the examination; if he decided to completely reject the opinion of Dr. Cruse because the examination occurred three months after the last date insured, he should have stated that in the decision.

Finally, the administrative law judge clearly rejected the opinion of the state agency medical consultant that Plaintiff was limited to simple tasks under routine supervision, and that he could relate effectively to coworkers but not the general public, as his RFC finding was that Plaintiff "retains the residual functional capacity for light work with occasional stooping" and " a mild to moderate level of discomfort, anxiety and

fatigue." Tr. 21, 178-80.  The administrative law judge stated that he concurred with the assessments of the state agency medical consultants with regard to Plaintiff's physical residual functional capacity assessment, but failed to make any comment with regard to the mental residual functional capacity assessment.  Tr. 21.  Because the administrative law judge also failed to follow the treating physician rule, this was error under the governing regulation:

> Unless the treating source's opinion is given controlling weight, the administrative law judge *must explain in the decision* the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527 (emphasis added).  As stated in Social Security Ruling 96-6p, 1996 WL 374180, *4:

> RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s). Again, *they are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence*.

(emphasis added); Tiger v. Apfel, No. 97-5134, 1998 WL 166246, at **2 (10th Cir. Apr. 7, 1998) (administrative law judge's failure to discuss and weigh state agency consultant's assessment of claimant's mental abilities violated requirements of Soc. Sec. Ruling 96-6p and undermined the administrative law judge's ultimate conclusions regarding claimant's alleged mental impairments).  The failure by the administrative law judge to comment on the mental residual functional capacity assessments of two different agency psychologists seems particularly important in light of their findings and the vocational

20

expert's response to a hypothetical posed by Plaintiff's attorney.   Both agency psychologists found that Plaintiff had marked limitation in his ability to understand, remember and carry out detailed instructions.   Tr. 178, 209.   The vocational expert testified that the jobs of electrical assembler, electric motor assembler, and wirer would be eliminated if the Plaintiff had marked limitations in the ability to understand, remember and carry out detailed instructions.   Tr. 393-94.

In sum, the administrative law judge's failure to provide any written explanation as to the weight assigned to the various medical opinions regarding Plaintiff's mental residual functional capacity makes it impossible for this Court to meaningfully review the decision.   The Commissioner in effect asks the Court to presume that none of the opinions were "discounted" by the administrative law judge, but such a presumption would be an inappropriate "post hoc effort to salvage" the administrative law judge's decision, requiring the Court to overstep its "institutional role and usurp essential functions committed in the first instance to the administrative process." <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004).   Moreover, such a presumption does not appear to be warranted, given the diagnosis and GAF score of Dr. Masters, the diagnosis of Dr. Cruse, and the opinions of the state medical consultants as to the functional limitations caused by Plaintiff's mental impairment. Accordingly, the matter must be remanded for the Commissioner to make appropriate findings regarding the weight to be assigned to the opinion of Plaintiff's treating physician, as well as the other medical opinions in the record.

Because this matter is to be remanded for additional administrative proceedings, it is both unnecessary and inappropriate to resolve Plaintiff's other claims of error. However, the Court does note that the administrative law judge made no specific findings regarding the physical and mental demands of Plaintiff's past relevant work, and particularly failed to make findings about specific transferable skills that he had acquired. See Plaintiff's Brief, p. 14-15; Tr. 21. Upon remand, the administrative law judge must be careful to make the required findings regarding the demands of Plaintiff's past work and any appropriate findings regarding specific transferable skills he may have acquired. "When an [administrative law judge] makes a finding that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable." Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001) (citing Soc. Sec. Ruling 82-41, 1982 WL 31389, at *7); Social Security Ruling 82-62, 1982 WL 31386 at *4 (administrative law judge to include "[a] finding of fact as to the physical and mental demands of the past job/occupation.").

## CONCLUSION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the Court finds that the final decision of the Commissioner of Social Security Administration should be reversed, and that the matter should be

remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion.

**DATED this 19th day of May, 2005.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE